(53 Misc. Rep. 13)

### BIMBERG v. WAGENHALS et al.

(Supreme Court, Special Term, New York County. February 25, 1907.)

PARTNERSHIP—ACTIONS FOR DISSOLUTION—RECEIVER—APPOINTMENT—GROUNDS.

On a motion by a member of an alleged theatrical partnership for the appointment, before judgment in an action for the dissolution of such partnership, of a receiver of such partnership, the evidence was conflicting as to the existence of the partnership. Neither the complaint nor the moving affidavit contained any averments of fraud, mismanagement, or misappropriation of assets by defendants. The affidavit alleged merely that deponent believed that, unless a receiver was appointed, the profits of the business would all be misappropriated by defendants, but set forth no facts. Defendants were financially responsible, and alleged in their opposing affidavit facts showing that they would be irreparably damaged if a receiver was appointed. *Held* that, the existence of the partnership being in doubt, and there being an entire absence of competent proof of fraud or mismanagement, or that plaintiff would suffer irreparable injury, a receiver would not be appointed under section 713, subd. 1, of the Code of Civil Procedure.

Motion by plaintiff for appointment of a receiver before judgment in action by Meyer R. Bimberg against Lincoln A. Wagenhals and others. Motion denied.

Putney, Twombly & Putney (Henry B. Twombly, of counsel), for the motion.

Sullivan & Cromwell (William J. Curtiss & Royal Victor, of counsel), opposed.

GIEGERICH, J.    This is a motion by the plaintiff before judgment for the appointment of a receiver of alleged partnership property and effects.    It appears from the motion papers that the defendants, by an instrument dated September 5, 1905, obtained from the Longacre Square Theater Company a lease for a term of years of the Astor Theater, situate at the northeast corner of Broadway and Forty-Fifth street, in the borough of Manhattan.    Subsequently the parties litigant entered into an agreement, bearing date the 8th day of September, 1905, whereby the defendants assigned to the plaintiff, among other things, a one-third interest in and to the lease above mentioned upon certain terms and conditions, among which are the contribution by° each of the parties of certain sums of securities at specified times "as part capital for the operation of the said theater and business."    The agreement further provides for the division of profits and the sharing of losses, and for the withdrawal by the defendants of a certain sum yearly for the services to be rendered by them in managing and conducting the said theater and business connected therewith. · The agreement also contains clauses to the effect that the defendants shall have the sole management and control of the theater and the business connected therewith and that the plaintiff shall have no voice in the management or control thereof, but that, if any production is given at the theater in which the defendants have an interest, the theater shall receive a stipulated percentage of the receipts; that the defendants "shall have the exclusive handling of all moneys and all the finances in connection with the said theater and business"; that books of account shall be kept by the defendants, with the privilege to the plaintiff of access thereto at reasonable times, and that the defendants should also deliver · to him a weekly statement in writing showing receipts and itemized disbursements thereof for the current week; and that "each of the terms and covenants in this agreement shall operate as a condition, and on a breach thereof by either party the other shall have the right to terminate this agreement on written notice."    The agreement does not provide a limitation for the continuance thereof.    The defendants, in January, 1907, gave written notice of the termination of the agreement because of the plaintiff's alleged breach, and tendered back a certain sum paid by him at the time of the execution of the agreement. The plaintiff then brought this action for a dissolution of the alleged copartnership, alleging in the complaint performance of all conditions of the agreement on his part, the defendant's refusal to permit him to inspect the books of account of the theater or to have any access thereto, and to furnish him with an account of all profits and losses, if any, and that the defendants have attempted to repudiate the agreement of copartnership.    The answer denies the existence of the alleged copartnership and generally the averments of the complaint as to the defendants' liability to account to the plaintiff, and further sets up failure to perform on plaintiff's part; the cancellation of the agreement by the defendants in the manner provided by its terms on account of plaintiff's alleged breach; and as a third defense and also as a counterclaim it alleges misrepresentations made to the defendants by the plaintiff at the time of the execution of the agreement and asks for its cancellation by reason thereof.

The defendants resist the motion for the appointment of a receiver upon the ground that the agreement in suit shows upon its face that it merely assigns an undivided interest in the lease and does not create a partnership. The plaintiff, on the other hand, insists that the agreement contains all the elements of a partnership and that it cannot be construed otherwise. While the latter view appears to find considerable support from the language of the instrument, it is claimed by the defendants that the parties themselves did not intend to create a partnership. In support of such contention the defendants produce the affidavit of Mr. I. N. Jacobson, who was the attorney for the defendants during the negotiations and in the drafting of the agreement, and the affidavit of the defendant Wagenhals, stating that the defendants rejected a draft agreement submitted by the plaintiff, which contemplated a partnership arrangement, upon the ground that they would not enter into that relationship with him. These allegations are denied by the replying affidavits of the plaintiff and Mr. William Grossman, who represented him in the preparation of the agreement; the plaintiff alleging that he was not informed at any time that there was any question whether or not there should be a partnership under the agreement, but that the question at issue was simply as to the form of said agreement of partnership. Mr. Grossman in his affidavit says that the only question that arose between Mr. Jacobson and himself was with regard to the terms of the agreement of partnership, and that several drafts were prepared before the terms were finally settled. It is well established that, in determining whether it was the intention of the parties to become partners, the court must look at the agreement as explained by their own transactions and statements. Heye v. Tilford, 2 App. Div. 346, 37 N. Y. Supp. 751, and citations, affirmed 154 N. Y. 757, 49 N. E. 1098. As above seen, there is a serious conflict with respect to the transactions and statements of the parties during the times mentioned, and this I find it impossible to determine upon affidavits. Such determination must therefore await the result of the trial. The existence of the partnership being left in doubt, a receiver should not be appointed (Goulding v. Bain, 4 Sandf. 716; McCarty v. Stanwix, 16 Misc. Rep. 132, 38 N. Y. Supp. 820; Day v. Dow, 46 App. Div. 148, 61 N. Y. Supp. 793; Kirkwood v. Smith, 64 App. Div. 615, 72 N. Y. Supp. 291; 72 App. Div. 429, 75 N. Y. Supp. 1016; 23 Am. & Eng. Enc. Law [2d Ed.] 1021), unless the plaintiff has complied with certain prerequisites to the appointment of a receiver in cases other than where the partnership is not disputed. The moving affidavit alleges:

"That the defendants have refused absolutely to give any information whatsoever about the business conducted in said Astor Theater and are conducting business solely for their own account, without any reference to deponent; that in deponent's belief said theater is making money, and unless a receiver is appointed to collect and conserve the profits of said business such profits will all be appropriated by the defendants, and dissipated."

It will be observed that no facts are set forth in support of the plaintiff's belief and fear regarding the matters so mentioned, and, as they are mere conclusions, they have been disregarded. Although the complaint alleges more specifically in what respects the defendants

failed to give plaintiff any information respecting the business of the alleged copartnership, neither the complaint nor the affidavits contain any averments whatever of fraud, mismanagement, or dissipation of assets upon the part of the defendants. So far as the financial responsibility of the defendants is concerned, it appears from their affidavits, without contradiction on the part of the plaintiff, that they are both abundantly able to satisfy any judgment which may be rendered against them in this action. It is further alleged in the opposing affidavits that possession of the theater was obtained by the defendants on September 21, 1906; that up to the present time no net profits have been obtained from its operation; that the leasehold in suit is held subject to the payment of quarterly rent of $10,000, and that the lessor will have the right of entry upon the failure to promptly pay such rent; that the defendants would be irreparably and immeasurably damaged if the management of the theater were taken out of their hands at this time by the appointment of a receiver; that they have contracts with other parties for the occupation of the theater for theatrical performances for about ten weeks in advance of the present date, and that they have numerous negotiations now pending with other parties for the occupation of the theater after that time; that the successful management of the property requires that the defendants should remain in charge; and that it was this reason principally which led them to insist at the time of the execution of the agreement that they should have the exclusive and absolute management and control of the property.

Subdivision 1, § 713, of the Code of Civil Procedure provides that a receiver may be appointed "before final judgment, on the application of a party who establishes an apparent right to or interest in the property, where it is in the possession of an adverse party, and there is danger that it will be removed beyond the jurisdiction of the court, or lost, materially injured or destroyed." It has been held that these provisions are exclusive, so far as they cover the subject, and an application for the appointment of a receiver is subject to their limitations. Colwell v. Garfield Nat. Bank, 119 N. Y. 408, 23 N. E. 739; Dazian v. Meyer, 66 App. Div. 577, 73 N. Y. Supp. 328.

In Colwell v. Garfield Nat. Bank, supra, the court construing section 713 of the Code, at page 413 of 119 N. Y. and page 740 of 23 N. E. said:

"The power of the court is, we think, limited by that section, and it must proceed in the manner pointed out thereby or else the orders will be void."

And in Dazian v. Meyer, supra, it was said (page 577 of 66 App. Div., page 330 of 73 N. Y. Supp.):

"Since the adoption of the Code the appointment of receivers is regulated by the provisions of sections 713 and 714, which are exclusive so far as the provisions cover the subject. Colwell v. G. N. Bank, 119 N. Y. 408," 23 N. E. 739.

Tested by these authorities, it is manifest that the moving papers are wholly insufficient to authorize the appointment of a receiver. As above noted, there is an entire absence of competent legal proof showing either fraud, mismanagement, or dissipation of funds upon the part of the defendants, or that the plaintiff will suffer irreparable

injury unless a receiver is appointed. In other words there is a total failure of the proof requisite to the appointment of a receiver, viz., danger that the property in suit will be removed beyond the jurisdiction of the court, or lost, materially injured or destroyed.

The motion for a receiver is therefore denied, with $10 costs.